IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PABLO SUASTEGUI VEGA,<br><br>                Plaintiff,<br><br>vs.<br><br>KEVIN MCALEENAN, Acting Secretary of Homeland Security, et al.,<br><br>                Defendants. | 8:19-CV-189<br><br>MEMORANDUM AND ORDER |

    The plaintiff, Pablo Suastegui Vega, is suing a number of government officials, asserting claims arising from his detention, pending deportation, and application for adjustment of status. Before the Court now is Suastegui Vega's motion (filing 15) for injunctive relief, asking the Court to order the government "to maintain the status quo by barring his removal, or further transfer, until he has been given full and fair consideration of his statutory claim to adjustment of status." Filing 15 at 3. But the Court lacks authority to grant that relief, and will deny the motion.

BACKGROUND

    Suastegui Vega entered the United States on February 2, 2016, fleeing gang violence in his hometown of Acapulco. Filing 17 at 6. He presented himself at a border crossing station and asked for asylum. Filing 17 at 6. He was 17 years old at the time. Filing 17 at 6. A month later, he was released into the custody of his aunt in Omaha. Filing 17 at 6, 12. On February 2, 2017, Suastegui Vega's aunt was appointed as his guardian by the County Court of Douglas County. Filing 17 at 24-26. Accordingly, he became eligible for "special

immigrant juvenile" status pursuant to 8 U.S.C. § 1101(a)(27)(J). He applied for that status on March 17, 2017 (while he was still a juvenile) and it was granted on March 8, 2018. Filing 17 at 32, 34.

That, in turn, made Suastegui Vega eligible for an adjustment of status to lawful permanent resident pursuant to 8 U.S.C. § 1255, so he applied for that on December 14, 2018. Filing 17 at 36. But he'd had some brushes with the law. He'd received several traffic citations—each time including a charge for driving without a license—and on November 24, 2018, he'd been arrested at a cockfight. Filing 17 at 7-8. On December 18, he was convicted in the County Court of Cass County of one count of animal neglect in violation of Neb. Rev. Stat. § 28-1009. Filing 17 at 52. He was fined $500 and sentenced to 5 days' time served. Filing 52 at 17. But he wasn't released—instead, he was detained by immigration authorities, and has been in detention since then. Filing 17 at 8.

Suastegui Vega was again subject to removal proceedings, pending his asylum claim. He moved to terminate the removal proceedings, citing his pending application for adjustment of status, but the immigration judge denied that motion on March 1, 2019, noting that he had no legal basis to terminate the removal proceedings because jurisdiction over Suastegui Vega's application for adjustment of status lay with Citizenship and Immigration Services (USCIS). Filing 17 at 56-58. Then, on March 5, the immigration judge denied Suastegui Vega's application for asylum and ordered him removed to Mexico. Filing 17 at 60-70. Suastegui Vega says that his removal order has been appealed to the Board of Immigration Appeals (BIA). *See* filing 16 at 10.

Suastegui Vega filed this suit on April 26. Filing 1. His application for adjustment of status had been pending for a little over 4 months, but he nonetheless alleged in his complaint that his application had not been

adjudicated within a "reasonable time." Filing 1. USCIS had held up the case for at least some of that time because of pending litigation that, according to Suastegui Vega, doesn't actually affect his case. *See* filing 17 at 86-88. Suastegui Vega was also unable to appear for his scheduled biometrics appointments because of his detention, and ICE refused to transport him. Filing 17 at 90-97.

But much of that was mooted on June 13, when USCIS notified Suastegui Vega that it intended to deny his application for adjustment of status. Filing 17 at 99. Pursuant to § 1255(a), an alien's status may be adjusted at the Attorney General's discretion if the alien (1) applies, (2) is statutorily eligible for an immigrant visa and admissible for permanent residence, and (3) an immigrant visa is immediately available. The notice provided by the USCIS field office director noted those criteria, but did not make a finding as to Suastegui Vega's statutory eligibility for adjustment of status—rather, the director noted that adjustment of status is a "discretionary benefit," and explained that Suastegui Vega's case presented "significant adverse factors which show that discretion should not be exercised in [his] favor." Filing 17 at 100. Specifically, the director noted Suastegui Vega's repeated citations for driving without a valid registration or operator's license, which "show[ed] disrespect for the law." Filing 17 at 100. And the director discussed the facts of Suastegui Vega's animal neglect conviction, describing the scene in somewhat brutal terms, and noting that Suastegui Vega had not only been present, but "fled and attempted to evade arrest" when authorities arrived. Filing 17 at 100.

That determination has also been appealed to the BIA. *See* filing 17 at 106-117. And, during Suastegui Vega's appeal from the order of removal, his removal is stayed. *See* 8 C.F.R. § 1003.6(a). But, he says, the Department of Homeland Security has asked that his appeal be summarily denied. Filing 15

at 2. So, he wants the Court to enjoin his removal pending his appeal from denial of his application for adjustment of status. Filing 15 at 3.

DISCUSSION

Ordinarily, in determining whether to grant a temporary restraining order, the Court must consider the factors set forth in *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Those factors include: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* at 114.

But the calculus is different when a removal order is at issue. Pursuant to 8 U.S.C. § 1252(a)(5), the "sole and exclusive means for judicial order of an order of removal" is an appeal to the appropriate Court of Appeals from the final order of removal. And "[n]otwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." § 1252(f)(2).

Of course, there is no final order of removal for Suastegui Vega yet, because the BIA has not yet reviewed the immigration judge's order. *See Solano-Chicas v. Gonzales*, 440 F.3d 1050, 1054 (8th Cir. 2006) (citing § 1101(a)(47)). But that doesn't help Suastegui Vega, because that means he's asking the Court to enjoin something that doesn't exist yet. Given that § 1252(f)(2) quite clearly precludes enjoining a final order of removal, the Court is not persuaded that Suastegui Vega can avoid that preclusion by asking the Court to enjoin the order of removal *before* it becomes final—because, simply put, except as provided in § 1252, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from" a removal order. §

1252(g); *cf. Lang v. Napolitano*, 596 F.3d 426, 428-30 (8th Cir. 2010); *cf. also Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017).[1]

That leaves Suastegui Vega—even leaving aside the problem of enjoining an order that's not enforceable yet—staring down § 1252(f)(2), and its burden of showing "by clear and convincing evidence that the entry or execution of [the removal] order is prohibited as a matter of law." *See Mhanna v. U.S. Dep't of Homeland Sec.*, No. 10-CV-292, 2010 WL 584034, at *12 (D. Minn. Feb. 16, 2010). That's a bar he doesn't clear, and his brief doesn't even try. *See* filing 16. But even if the Court transposes his arguments for "likelihood of success on the merits" into a § 1252(f)(2) argument, they don't carry enough weight.

To begin with, there's something of a disconnect between Suastegui Vega's operative pleadings and his motion for injunctive relief, because while his amended complaint expressly "is not challenging his removal order," filing 9 at 5, his motion for injunctive relief is doing precisely that. And as noted above, Suastegui Vega's initial complaint had focused on USCIS's failure to adjudicate his application for adjustment of status in what he considered to be a reasonable time. *See* filing 1. After USCIS notified him of its intent to deny his application, however—undercutting his "failure to adjudicate" claim—he filed an amended complaint. *See* filing 9.

---

[1] That would not, of course, preclude Suastegui Vega from attempting to persuade the Court of Appeals to stay execution of a final removal order, during an appeal from that order. *See Nken v. Holder*, 556 U.S. 418 (2009). And that might be his better choice. It made some sense to litigate in district court when the gravamen of the case was a "failure to adjudicate," given the caselaw discussed in more detail below. But the situation has obviously changed, and Suastegui Vega isn't obliged to stay in district court just because he started here. Choice of forum shouldn't be based on inertia.

Suastegui Vega's amended complaint asserts four claims, two of which still arise out of alleged delay in adjudicating his application for adjustment of status. *See* filing 9 at 30-33. One of those claims, at least, might have been justiciable here, although opinions differ. *See Debba v. Heinauer*, No. 8:08-cv-304, 2009 WL 146039, at *3 (D. Neb. Jan. 20, 2009), *aff'd*, 366 F. App'x 696 (8th Cir. 2010); *see also Irshad v. Napolitano*, 8:12-cv-173, 2012 WL 4593391, at *5 (D. Neb. Oct. 2, 2012), *aff'd sum nom. Irshad v. Johnson*, 754 F.3d 604 (8th Cir. 2014); *al Kurdy v. USCIS*, No. 8:07-cv-225, 2008 WL 151277, at *3-4 (D. Neb. Jan. 10, 2008); *Qijuan Li v. Chertoff*, No. 8:07-cv-50, 2007 WL 2123740, at *3 (D. Neb. Jul. 19, 2007); *see generally Labaneya v. USCIS*, 965 F. Supp. 2d 823, 826-33 (E.D. Mich. 2013) (collecting cases). *But see Yang v. Gonzalez*, No. 4:06-cv-3290, 2007 WL 1847302, at *1-2 (D. Neb. Jun. 25, 2007). But even if the claim was justiciable, it's not particularly persuasive. The Eighth Circuit has affirmed denial of relief after far, far longer than 4½ months. *See Irshad*, 754 F.3d at 607 (4½ years); *Debba*, 366 F. App'x at 699 (8½ years). And "[t]here is no indication that the deliberative process of the government officials in this case is a sham." *Irshad*, 754 F.3d at 607.

In short, the Court has nothing before it that would allow it to conclude that USCIS has unreasonably delayed or unlawfully withheld agency action. *See Org. for Competitive Markets v. U.S. Dep't of Ag.*, 912 F.3d 455, 461-63 (8th Cir. 2017). And in any event, at least as far as USCIS is concerned, this claim is moot. *See Mamigonian v. Biggs*, 710 F.3d 936, 942 (9th Cir. 2013); *Ferry v. Gonzales*, 457 F.3d 1117, 1133 (10th Cir. 2006); *Mohammed v. Frazier*, No. 07-CV-3037, 2008 WL 11349969, at *2 (D. Minn. Mar. 17, 2008); *Bouguettaya v. Chertoff*, 472 F. Supp. 2d 1, 2 (D.D.C. 2007); *Woods v. Moyer*, No. 4:05-CV-723, 2006 WL 2473426, at *2 (E.D. Mo. Aug. 24, 2006); *see also Ayyoubi v. Holder*,

712 F.3d 387, 391 (8th Cir. 2013); *Li v. Chertoff,* No. 07-cv-2523, 2008 WL 465261, at *2 (D. Minn. Feb. 15, 2008).[2]

Suastegui Vega's next claim is styled as a claim under the Administrative Procedure Act (APA) based on USCIS's decision to deny his application for adjustment of status without providing him a personal interview. Filing 9 at 31. But the Eighth Circuit has held that even the Court of Appeals lacks jurisdiction to review a discretionary decision regarding adjustment of status. *Mutie-Timothy v. Lynch,* 811 F.3d 1044, 1048 (8th Cir. 2016). And the Eighth Circuit has rejected the argument that due process is violated by refusing to terminate removal proceedings pending adjudication of an application for status adjustment, holding that an alien "has no constitutionally-protected liberty interest in the discretionary relief of adjustment of status." *Hanggi v. Holder,* 563 F.3d 378, 384 (8th Cir. 2009). That holding is applicable both to Suastegui Vega's larger claim, and his specific argument that due process is required in the context of an application for discretionary adjustment of status. *See Nativi-Gomez v. Ashcroft,* 344 F.3d 805, 809 (8th Cir. 2003).

Suastegui Vega attempts to present this claim to the Court as a question of law instead of a discretionary decision, by asserting that USCIS found him statutorily "ineligible for adjustment of status." *See* filing 9 at 31. A discretionary denial of adjustment of status may be reviewable—at least, by a Court of Appeals—if "the petition for review raises a constitutional claim or

---

[2] The Court notes that the Eighth Circuit's recent decision in *Haroun v. U.S. Dep't of Homeland Sec.* is clearly distinguishable, because it arose from an application for citizenship, and the statutory scheme for deciding naturalization applications expressly provides both for *de novo* review by the district court and for the district court to act when USCIS doesn't rule on an application within 120 days. No. 17-3133, slip op. at 4-7 (8th Cir. Jul. 15, 2019).

question of law." *Mutie-Timothy*, 811 F.3d at 1048; *see Abdelwahab v. Frazier*, 578 F.3d 817, 820 n.4 (8th Cir. 2009); *cf. Dominguez-Herrera v. Sessions*, 850 F.3d 411, 414-15 (8th Cir. 2017). Of course, there is no final decision to deny here, and this is not a Court of Appeals. But even setting that aside, Suastegui Vega's argument for judicial review gains little traction.

Suastegui Vega relies on the Second Circuit's decision in *Yang v. Mukasey*, which he cites for the proposition that a Court of Appeals "retain[s] jurisdiction over denials of status applications even when the denial is based on part on a matter of discretion when the discretionary determination is based on the same grounds as the eligibility determination." 514 F.3d 278, 279 (2d Cir. 2008) (*per curiam*). Suastegui Vega argues that this is such a case—that is, that USCIS decided he was legally ineligible for adjustment of status, and its decision was legally incorrect. *See* filing 16 at 23. So, he concludes, his claim that the USCIS erred in denying his adjustment of status is reviewable, he says he's likely to prevail on that claim, and that in turns means the Court should enjoin removal.

But to begin with, that argument rests on a misconstruction of the director's decision, which did <u>not</u> find Suastegui Vega ineligible for adjustment. Rather, the decision did not discuss eligibility—it only discussed (at length) the director's exercise of discretion. Filing 17 at 100-01. And the USCIS was not required to make a determination on statutory eligibility where it determined that the application should be denied as a matter of discretion instead. *See Immigration and Naturalization Serv. v. Bagamasbad*, 429 U.S. 24, 25-26 (1976).

So, this is not a case in which the USCIS made "a putative discretionary denial wholly predicated upon the same facts as it would have had to rely to find inadmissibility or statutory ineligibility." Filing 16 at 27. It is, rather, a

case like *Yang*—in which the Second Circuit dismissed the applicant's appeal upon finding that the decision to deny the application was based upon "independent, discretionary reasons," including uncharged criminal conduct. *Compare Yang*, 514 F.3d at 279-80, *with Singh v. Gonzales*, 468 F.3d 135, 137-38 (2d Cir. 2006) (finding jurisdiction where the decisionmaker found the applicant statutorily ineligible and pretermitted the application, and the sole basis for the "discretionary" ruling made *obiter dictum* was the same as the basis for the eligibility determination). This case plainly involves a discretionary decision, and "factual arguments couched in legal or constitutional terms are insufficient to overcome the jurisdictional bar." *See Mutie-Timothy*, 811 F.3d at 1048-49.

Furthermore, Suastegui Vega's argument is premised on an illogical understanding of the Attorney General's discretionary authority to adjust status. The gist of Suastegui Vega's argument is that because his criminal convictions fall within a statutory exception to ineligibility for adjustment of status, "USCIS does not have the discretion to override that exception by styling an otherwise non-disqualifying criminal conviction as a negative discretionary factor that can justifying denial of an adjustment application." Filing 16 at 29-30. But the implication of that argument is that USCIS's "discretion" only extends as far as statutory ineligibility—a position rejected by the Second Circuit authority upon which Suastegui Vega relies. The Attorney General's discretion to deny adjustment of status would be nugatory if it could not be based on facts that weren't sufficient to render the applicant legally ineligible for adjustment. It is, in fact, evident that even when an alien satisfies the statutory requirements of eligibility for an adjustment of status, the application can still be denied as a matter of discretion. *See Drax v. Reno*, 338 F.3d 98, 113 (2d Cir. 2003).

In short, the Court finds little reason to believe that Suastegui Vega's claim regarding his eligibility for adjustment of status is subject to judicial review, even by the Court of Appeals following a final determination. Of course, Suastegui Vega could always succeed in persuading the BIA that the Attorney General's discretion should be exercised in his favor. But the Court has little basis to conclude one way or the other whether he's *likely* to succeed in doing so—and more importantly, the possibility of BIA reaching a different decision on the merits falls well short of demonstrating by "clear and convincing evidence" that Suastegui Vega's removal from the United States is "prohibited as a matter of law." *See* § 1252(f)(2).

The final claim in Suastegui Vega's amended complaint asserts constitutional and statutory rights to an individualized bond hearing pending adjudication of the removal order. Filing 9 at 33-35. Maybe, maybe not. There is certainly reason to question whether Suastegui Vega has a constitutional right to a bond hearing while removal proceedings are pending (at least in the absence of more prolonged detention than Suastegui Vega has endured to this point). *See Demore v. Kim*, 538 U.S. 510, 517-530 (2003). He also asserts a statutory claim pursuant to 8 U.S.C. § 1226(a), claiming that provision (which provides for apprehension and detention of aliens already admitted to the United States) applies to him because he was paroled into the United States as a special immigrant juvenile. Filing 9 at 34; *see* 8 U.S.C.A. § 1255(h)(1) (providing that special immigrant juveniles are deemed "paroled" into the United States). But there is a difference in immigration law between being "paroled" into the United States and being "admitted." *See* § 1101(a)(13)(B); 8 C.F.R. § 1001.1(q). So, Suastegui Vega may still be an "arriving alien" seeking asylum, whose detention is governed by 8 U.S.C. § 1225(b)(1) instead—and it

"says [no]thing whatsoever about bond hearings." *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018).

But the record is not complete on that issue, and the Court need not wade into those murky statutory waters (especially without the benefit of briefing) at this point because, as the Court reads Suastegui Vega's motion, it doesn't implicate his claim for a bond hearing. Instead, he prays only "to maintain the status quo by barring his removal, or further transfer"—which is not directed at the harms associated with his continued detention.

Finally, the Court has also noted the protest from Suastegui Vega's counsel that by transporting Suastegui Vega from Cass County to Hall County in late June, after the notice of intent to deny adjustment was issued, the government has "further frustrat[ed his] efforts at obtaining a full and fair adjudication of his adjustment application." Filing 16 at 7. It doesn't appear, however, that Suastegui Vega seeks to address that problem with his motion either, except to enjoin "further transfer." But there is no indication that further transfer is imminent—and, while the Court has some sympathy for counsel having to drive an extra two hours each way to visit their client, the Court isn't persuaded that the inconvenience imposed at this point would warrant judicial intervention.

## CONCLUSION

In sum, the Court finds that even if Suastegui Vega was subject to a final order of removal, the Court could only enjoin enforcement of the order on "clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." § 1252(f)(2). None of Suastegui Vega's arguments persuade the Court that he *cannot*, *as a matter of law*, be removed. Accordingly,

IT IS ORDERED that Suastegui Vega's motion for a temporary restraining order and preliminary injunction (filing 15) is denied.

Dated this 17th day of July, 2019.

BY THE COURT:

John M. Gerrard
Chief United States District Judge